IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DENNIS LEE WALLS,            :    Civil No. 3:19-cv-1288
                                  :
         Petitioner          :        (Judge Mariani)
                                    :
    v.                            :
                                    :
CHAD WAKEFIELD,             :
                                    :
         Respondent        :

**MEMORANDUM**

I.    **Background**

Petitioner Dennis Lee Walls ("Walls") files the instant petition for writ of habeas

corpus pursuant to 28 U.S.C. § 2254, challenging a 2015 conviction and sentence imposed

in the Court of Common Pleas of Adams County in criminal case CP-01-CR-0000288-2015.

(Doc. 1).

For the reasons set forth below, the petition for writ of habeas corpus, which is

governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132,

110 Stat. 1214, April 24, 1996 ("AEDPA"), will be denied.

II.    **State Court Factual and Procedural Background**

The relevant facts and procedural history are extracted from the Superior Court of

Pennsylvania's December 28, 2018 decision affirming the denial of Walls' petition filed

pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546, and are as

follows:

> In December of 2015, Appellant was tried before a jury for various offenses,
> including rape. The testimony of the victim in this case, J.D., can be

summarized as follows. J.D. testified that she was in a relationship with Appellant for approximately two years, but they had broken up on March 2, 2015. N.T. Trial, 12/8/15, at 36, 37. Nevertheless, Appellant was still living with J.D. on March 7th of that year. *Id.* at 37. That day, J.D. went to work and when she got home, she lay in bed with Appellant, who was watching a movie. *Id.* at 38, 39. J.D. testified that Appellant began rubbing her stomach and she told him to stop. *Id.* at 39. At that point, Appellant got up and walked out of the room, and J.D. went to sleep. *Id.*

J.D. claimed that she awoke a short time later and saw Appellant "sitting … oddly" on the bed like he was "lost." *Id.* at 40. J.D. asked Appellant what he was doing, and Appellant "got angry. He leaned down and came up with a gun[,]" which he "put … to the side of [J.D.'s] head." *Id.* Appellant cocked the gun and repeatedly said, "didn't I tell you not to fuck with me[?]" *Id.* at 42. J.D. testified that she was terrified for her life. *Id.* Appellant then "told [J.D.] that [she] had a choice to be with him or to be dead[,]" at which point she "started to cry, but [she] told him that [she] would be with him." *Id.* at 43.

Appellant then "put the gun in his own mouth and said that he was going to kill himself." *Id.* J.D. tried to calm Appellant down, but she "started crying bad." *Id.* at 44. Appellant put the gun on his lap and tried to comfort J.D. *Id.* J.D. claimed that Appellant eventually put the gun on the floor, hugged her, and told her that "his boys" - whom J.D. believed meant members of a gang to which Appellant belonged - "knew who [J.D.] was, where [she] lived, who [her] son was, where [her] parents lived, and that if [she] told someone, that they'd come after [her], that they were going to be calling and checking in on him and if he didn't answer his phone, then they would know [J.D.] called the cops and they'd come after [her]." *Id.* at 45.

J.D. testified that Appellant then moved the gun underneath the nightstand about three to four feet away from her and told her "that he wanted to have sex." *Id.* at 48. J.D. told Appellant that she did not want to have sex, but he continued his advances by "trying to take her pants off." *Id.* at 49. J.D. then "told [Appellant] to just get it over with." *Id.* J.D. testified that she relented because she "was scared," based on Appellant's having put a gun to her head, and she was "not going to fight him." *Id.* at 50. Appellant and J.D. had intercourse, during which J.D. "had [her] hands over [her] eyes crying." *Id.* at 51. J.D. claimed that she did not consent to the sexual encounter with Appellant. *Id.* at 52. After intercourse, J.D. testified that Appellant received "two phone calls" that "[h]e said … were from his boys." *Id.* at 54. Appellant told J.D. that he was "going to meet one of them to give the gun back" at a Sheetz gas station. *Id.* at 54, 55. Appellant "got the gun and put it in a plastic bag," after which he took J.D.'s phone "so [she] wouldn't try anything stupid like calling the police." *Id.* at 55.

The next day at work, J.D. told a coworker, Brittany Eline, about the incident, and the coworker called the police. *Id*. at 61. Littlestown Police Officer Gary Gearhart responded to the report. *Id*. J.D. gave Officer Gearhart consent to search a truck that was owned by both J.D. and Appellant, and in the truck, the officer "found the gun in the plastic bag under the driver's seat...." *Id*. at 64, 85. J.D. testified that it was the same gun that Appellant had pointed at her head. *Id*. Upon further inspection of the gun, Officer Gearhart determined that it "was more of a toy gun" that would "shoot little white BBs out." *Id*. at 86. However, the officer testified that the gun looked like a real handgun. *Id*.

Additionally, on March 9, 2015, J.D. reported to police that she was "clearing out possessions in [her] apartment and in the nightstand drawer in a common used bedroom she had discovered a small cloth bag that she thought may have contained drug paraphernalia and some controlled substance." *Id*. at 95. J.D. informed police that the drawer where she discovered the contraband was exclusively used by Appellant. *Id*. at 96. Police ultimately retrieved the bag from J.D., and later testing of several "clear capsules" discovered in the bag revealed that they "contained Fentanyl, a Schedule II controlled substance...." *Id*. at 97, 104. Based on these facts, Appellant was arrested and charged with various offenses.

On December 8, 2015, Appellant's jury trial was conducted. At the close thereof, Appellant was convicted of rape by forcible compulsion, 18 Pa.C.S. § 3121(a)(1); sexual assault, 18 Pa.C.S. § 3124.1; intimidation of a witness, 18 Pa.C.S. § 4952(a)(1); terroristic threats, 18 Pa.C.S. § 2706(a)(1); indecent assault, 18 Pa.C.S. § 3126(a)(1); and simple assault, 18 Pa.C.S. § 2701(a)(3).[1] Appellant was sentenced on April 18, 2016, to an aggregate term of 16 to 34 years' incarceration.

Appellant did not file a direct appeal. Instead, on April 13, 2017, he filed a timely, counseled PCRA petition raising various claims of ineffective assistance of counsel (IAC).[2] On October 23, 2017, the PCRA court conducted an

---

[1]   Appellant was acquitted of possession of a controlled substance, 35 P.S. § 780-113(a)(16), and possession of drug paraphernalia, 35 P.S. § 780-113(a)(32).

[2]   Walls raised the following issues for PCRA review:

    1. Failure of trial counsel to call witnesses who would have allegedly testified to the victim's ulterior motive in having Petitioner arrested.

    2. Failure of trial counsel to introduce telephone records.

    3. Failure of trial counsel to call witnesses to testify to Petitioner's good character.

    4. Failure of trial counsel to call witnesses to testify to the victim's bad character.

    5. Failure of trial counsel to call witnesses who would testify as to Petitioner's clean drug history.

    6. Failure of trial counsel to introduce evidence of Petitioner's medical treatment.

evidentiary hearing. On April 4, 2018, the court issued an order and opinion denying Appellant's petition. Appellant filed a timely notice of appeal, however he failed to timely comply with the PCRA court's subsequent order to file a Pa.R.A.P. 1925(b) statement. Accordingly, on May 30, 2018, the PCRA court issued a Rule 1925(a) opinion concluding that Appellant's issues were waived but noting that its reasons for denying his petition were fully set forth in its April 4, 2018 opinion. *See* Trial Court Opinion, 5/30/18, at 1.

On June 7, 2018, Appellant filed a "*nunc pro tunc*" Rule 1925(b) statement. Therein, he claimed that he never received the order directing him to file a concise statement. He then reiterated the same IAC claims raised in his PCRA petition, and which were addressed by the court in its April 4, 2018 opinion. Given this record, we decline to remand under Rule 1925(c)(3); instead, we will address the merits of Appellant's claims. *See Commonwealth v. Burton*, 973 A.2d 428, 433 (Pa. Super. 2009) (holding that, "if there has been an untimely filing, this Court may decide the appeal on the merits if the trial court had adequate opportunity to prepare an opinion addressing the issues being raised on appeal").

Herein, while Appellant sets forth one IAC issue in his Statement of the Questions,[3] in his Argument section, he divides that issue into fourteen sub-claims of trial counsel's ineffectiveness. Initially, "we note that it has been held that when an appellant raises an extraordinary number of issues on appeal, as in this case, a presumption arises that there is no merit to any of them." *Estate of Lakatosh*, 656 A.2d 1378, 1380 n.1 (Pa. Super. 1995). "Appellate advocacy is measured by effectiveness, not loquaciousness." *Id.*

---

7. Failure of trial counsel to cross-examine the affiant with regards to potential biases.

8. Failure of trial counsel to secure surveillance footage.

9. Failure of trial counsel to object to hearsay testimony.

10. Failure of trial counsel to cross examine any witnesses adequately.

11. Failure of trial counsel to conduct an adequate opening statement.

12. Failure of trial counsel to properly investigate the victim prior to trial.

13. Failure of trial counsel to adequately consult with and prepare Petitioner prior to his trial.

[3]   Specifically, Appellant states:

Whether the trial court erred in refusing to grant [Appellant's] request for PCRA relief on the basis of ineffective assistance of [Appellant's] prior counsel, where prior counsel's multiple failures and deficiencies so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

Appellant's Brief at 2.

(Doc. 23-4 at 142, *Commonwealth v. Walls*, 766 MDA 2018 at 1-6 (Pa. Super. Dec. 28, 2018) (unpublished memorandum).   On December 28, 2018, the Superior Court, adopting the PCRA court's decision as their own, affirmed the denial of Walls' PCRA petition.   *Id*. On January 24, 2019 Walls filed a timely petition for allowance of appeal (Doc. 23-4 at 99) to the Pennsylvania Supreme Court, which was denied on July 8, 2019.   (Doc. 23-4 at 171, *Commonwealth v. Walls*, 44 MAL 2019 (Pa. 2019).

Thereafter, on July 24, 2019, Walls filed the instant timely petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.   In his petition, Walls raises the following four ineffective assistance of counsel claims for relief:   (1) ineffective assistance of trial counsel for failure to present several witnesses at his trial regarding an alleged motivation for the victim to falsify testimony, (2) ineffective assistance of trial counsel for failure to present several character witnesses at trial concerning his reputation for non-violence and concerning the victim's character for truthfulness, (3) ineffective assistance of trial counsel for failure to move for dismissal due an insufficiency of the evidence, and (4) ineffective assistance of trial counsel for failure to argue to the jury or request an instruction regarding an adverse inference to be drawn against the victim's testimony due an alleged delay in reporting the rape.   (Doc. 1).

### III.   Legal Standards of Review

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement.   *Preiser v. Rodriguez*, 411 U.S. 475, 498-99 (1973).   28 U.S.C. § 2254, provides, in pertinent part:

(a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States

....

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254.   Section 2254 sets limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner.   *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *Glenn v. Wynder*, 743 F.3d 402, 406 (3d Cir. 2014).   A federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. § 2254(a).   This limitation places a high threshold on the courts.   Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings resulted in "a fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure."   *Reed v. Farley*, 512 U.S. 339, 348 (1994) (citations omitted).

Wall's case is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA").

## IV.   Discussion

### A. Exhaustion and Procedural Default

Before considering the merits of Walls' grounds for relief, the Court must address

Respondent's contention that two of the claims raised are unexhausted and procedurally

defaulted.   Specifically, Respondent asserts that Petitioner's third and fourth grounds

raised are unexhausted and procedurally defaulted.   (Doc. 23 at 11-18).

Absent unusual circumstances, a federal court should not entertain a petition for writ

of habeas corpus, unless the petitioner has first satisfied the exhaustion requirement

articulated in 28 U.S.C. § 2254(b).   Specifically, habeas relief "shall not be granted unless it

appears that . . . the applicant has exhausted the remedies available in the courts of the

State." 28 U.S.C. § 2254(b)(1)(A); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845

(1999).   The exhaustion requirement is grounded on principles of comity to ensure that

state courts have the initial opportunity to review federal constitutional challenges to state

convictions.   *See Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000); *Picard v. Connor*,

404 U.S. 270, 275–76 (1971).   The habeas statute codifies this principle by requiring that a

petitioner exhaust the remedies available in the courts of the State, 28 U.S.C. §

2254(b)(1)(A), meaning a state prisoner must "fairly present" his claims in "one complete

round of the state's established appellate review process," before bringing them in federal

court.   *O'Sullivan*, 526 U.S. at 845 (stating "[b]ecause the exhaustion doctrine is designed

to give the state courts a full and fair opportunity to resolve federal constitutional claims

before those claims are presented to the federal courts, . . . state prisoners must give the

state courts one full opportunity to resolve any constitutional issues by invoking one

complete round of the State's established review process."); *see also Duncan v. Henry*, 513

U.S. 364, 365 (1995); *Picard*, 404 U.S. at 275 (1971); *Lambert v. Blackwell*, 134 F.3d 506,

513 (3d Cir. 1997).   This requires that the claim brought in federal court be the substantial

equivalent of that presented to the state courts.   *Picard*, 404 U.S. at 278; *see also*

*McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999) (holding that petitioner must

present both "factual and legal substance" of claim to state courts).   Mere reliance of state

and federal claims on the same constitutional provision does not render the two claims

substantially equivalent.   *See Brown v. Cuyler*, 669 F.2d 155 (3d Cir. 1982); *Zicarelli v.*

*Gray*, 543 F.2d 466 (3d Cir. 1976).   Both the legal theory and the facts on which a federal

claim rests must have been presented to the state courts.   *See Picard*, 404 U.S. at 277;

*Brown*, 669 F.2d at 158–61. "When a claim is not exhausted because it has not been 'fairly

presented' to the state courts, but state procedural rules bar the applicant from seeking

further relief in state courts, the exhaustion requirement is satisfied because there is 'an

absence of available State corrective process.'   28 U.S.C. § 2254(b).   In such cases,

however, applicants are considered to have procedurally defaulted their claims and federal

courts may not consider the merits of such claims unless the applicant establishes 'cause

and prejudice' or a 'fundamental miscarriage of justice' to excuse his or her default.   *See*

*Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)."

*McCandless*, 172 F.3d at 260.   To demonstrate "cause" for a procedural default, a

petitioner must point to some objective external factor which impeded his efforts to comply

with the state's procedural rule.   *See Murray v. Carrier*, 477 U.S. 478, 488 (1986).

"Prejudice" will be satisfied only if he can demonstrate that the outcome of the state

proceeding was "unreliable or fundamentally unfair" as a result of a violation of federal law. *See Lockhart v. Fretwell*, 506 U.S. 364, 366 (1993).

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," *Murray*, 477 U.S. at 496, then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); Wenger v. Frank, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998); Murray, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

It is Respondent's position that Petitioner's arguments that "trial counsel was counsel was ineffective for: (1) failing to challenge the sufficiency of the Commonwealth's evidence with respect to whether the alleged intercourse was consensual or not, and (2) failing to request a jury instruction with regard to drawing an adverse inference against Victim's testimony based upon a delayed report of the crime", have never been presented to a state court, and, consequently, are procedurally defaulted. (Doc. 23 at 13). Petitioner argues that he can overcome the procedural default of this claim under the authority of *Martinez v.*

*Ryan*, 566 U.S. 1 (2010), claiming that his PCRA counsel was ineffective because he failed to raise trial counsel's ineffectiveness for not raising these claims.   (Doc. 26 at 10).

*Martinez v. Ryan*, 566 U.S. 1 (2010), recognized a "narrow exception" to the general rule that attorney errors in collateral proceedings do not establish cause to excuse a procedural default.   Specifically, *Martinez* holds that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."   *Id.* at  9.   To successfully invoke the *Martinez* exception, a petitioner must satisfy two factors: that the underlying, otherwise defaulted, claim of ineffective assistance of trial counsel is "substantial," meaning that it has "some merit," *id.* at 14; and that petitioner had "no counsel" or "ineffective" counsel during the initial phase of the state collateral review proceeding.   *Id.* at 17; *see also Glenn v. Wynder*, 743 F.3d 402, 410 (3d Cir. 2014).

A petitioner demonstrates that the underlying ineffective assistance of trial counsel claim has "some" merit by "show[ing] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Workman v. Superintendent Albion SCI*, 915 F.3d 928, 937-38 (3d Cir. 2019); *see also Martinez*, 566 U.S. at 13-14.   A petitioner demonstrates that post-conviction counsel's ineffectiveness caused the procedural default by showing that post-conviction counsel's performance was deficient under the first prong of the *Strickland v. Washington*, 466 U.S. 668 (1984) standard.   *See Preston v. Sup't Graterford, SCI*, 902 F.3d 365, 376 (3d Cir. 2018); *see also Workman*, 915 F.3d at 937–38.   Satisfaction of the first *Strickland* prong

requires a petitioner to demonstrate that "counsel's representation fell below an objective

standard of reasonableness," with reasonableness being judged under professional norms

prevailing at the time counsel rendered assistance.   *Strickland*, 466 U.S. at 688.   We will

address Respondent's argument concerning the exhaustion and procedural default of

Petitioner's third and fourth claims.

### i. **Claim Three**

Petitioner contends that trial counsel "rendered ineffective assistance by failing to

demur or to properly challenge the sufficiency of the Commonwealth's evidence to establish

the essential elements of forcible compulsion and lack of consent to sustain Petitioner's

conviction for rape by forcible compulsion, indecent assault and sexual assault."   (Doc. 10-

1 at 88).   Specifically, he "contend[s] that his trial counsel, Attorney Pudleiner, failed to

seek dismissal of the charges at the conclusion of the Commonwealth's case-in-chief on the

grounds that the prosecution failed to establish he essential elements of forcible compulsion

and lack of consent beyond a reasonable doubt." *Id.*

In *Jackson v. Virginia*, 443 U.S. 307 (1979), the United States Supreme Court set the

standard for a due process claim based on sufficiency of the evidence.   Pursuant to

*Jackson*, a habeas petitioner alleging that evidence is insufficient to support a conviction

must persuade the Court that the evidence, viewed in a light most favorable to the

prosecution, could not move a rational trier of fact to find guilt beyond a reasonable doubt.

*Id.* at 319, 324.   Review of the evidence must be based upon state law; that is, the ultimate

question is whether the prosecution provided evidence to support the substantive elements

of the offense as defined by state law.   *Id.* at 324 n.16.   Under the AEDPA, review for

11

sufficiency of the evidence means a determination whether the state court disposition was

an objectively unreasonable application of the Jackson standard or its state court

equivalent.   *See* 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 379-390 (2000);

*Evans v. Court of Common Pleas, Delaware County*, 959 F.2d 1227, 1233 (3d Cir.

1992)(sufficiency standard is same under Pennsylvania and federal law); *Jackson*, 443 U.S.

at 319 (court reviewing sufficiency of evidence must determine whether evidence admitted

at trial and all reasonable inferences drawn therefrom, when viewed in light most favorable

to Commonwealth as verdict winner, is sufficient to support all elements of crime beyond a

reasonable doubt); *Commonwealth v. Wilson*, 2003 Pa. Super. 205, 825 A.2d 710, 713 (Pa.

Super. 2003) (same); *Commonwealth v. Hopkins*, 2000 Pa. Super. 47, 747 A.2d 910, 914

(Pa. Super. 2000) (matters of credibility, reliability, or weight of the evidence are within the

sole province of the fact-finder, who is free to believe all, part, or none of the evidence

presented).

   Rape, a felony of the first degree, occurs when a person engages in sexual

intercourse with a complainant by forcible compulsion. 18 Pa.C.S.A. § 3121(a)(1).   Sexual

intercourse is physical sexual contact between individuals involving the genitalia of at least

one person.   *See Commonwealth v. Kelley*, 599 Pa. 179, 801 A.2d 551 (2002).   "[S]ome

penetration however slight" is required to establish "sexual intercourse," however, emission

is not required.   18 Pa.C.S.A. § 3101.   "Forcible compulsion" includes physical force as

well as moral, psychological, or intellectual force, used to compel a person to engage in

sexual intercourse against that person's will.   *Id.   See Commonwealth v. Riley*, 643 A.2d

1090 (Pa. Super. 1994).   *See also Commonwealth v. Rhodes*, 510 Pa. 537, 510 A.2d 1217

(1986). Whether forcible compulsion will be found is a determination based on the totality of the circumstances. *See Commonwealth v. Smolko*, 666 A.2d 672 (Pa. Super. 1995). Factors to be considered include the respective mental and physical conditions of the victim and the accused, the atmosphere and physical setting where the incident took place, along with the defendant's relative position of authority, domination, or custodial control over the victim and the degree of duress felt by the victim. *See Commonwealth v. Smolko, supra.* at 676. *See also Commonwealth v. Price*, 616 A.2d 681 (Pa. Super. 1992) (forcible compulsion found where the victim was asleep when attacked but woke up and struggled with her attacker). Where a defendant uses physical force, the threat of physical force, or psychological coercion, the "forcible compulsion" component has been established. *See* 18 P.A. C.S.A. § 3121(a)(1). The degree of force depends on the totality of the facts and circumstances of the particular case. *See Commonwealth v. Riley*, 643 A.2d 1090 (Pa. Super. 1994) (forcible compulsion found where victim refused to have intercourse, but attacker compelled her to do so by laying on top of her and pinning her with his body weight thwarting her attempts to resist and penetrating her). The victim need not resist a person trying to force sexual intercourse against her will. *See id*. at 1091.

"A person who has indecent contact with the complainant or causes the complainant to have indecent contact with the person is guilty of indecent assault if: (1) the person does so without the person's consent; [or] (2) the person does so by forcible compulsion." 18 Pa.C.S.A. § 3126. Indecent contact is defined as "any touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in either person." 18 Pa.C.S.A. § 3101.

In the case sub judice, the Petitioner penetrated the victim vaginally with his penis.

(Doc. 23-1 at 96).   Regarding the forcible compulsion element, the totality of the

circumstances support the conclusion that the evidence demonstrated "forcible compulsion"

through physical and psychological means as testified to by the victim at trial:

> J.D. claimed that she awoke a short time later and saw Appellant "sitting …
> oddly" on the bed like he was "lost." *Id.* at 40. J.D. asked Appellant what he was
> doing, and Appellant "got angry. He leaned down and came up with a gun[,]"
> which he "put … to the side of [J.D.'s] head." *Id.* Appellant cocked the gun and
> repeatedly said, "didn't I tell you not to fuck with me[?]" *Id.* at 42. J.D. testified
> that she was terrified for her life. *Id.* Appellant then "told [J.D.] that [she] had a
> choice to be with him or to be dead[,]" at which point she "started to cry, but
> [she] told him that [she] would be with him." *Id.* at 43.

> Appellant then "put the gun in his own mouth and said that he was going to kill
> himself." *Id.* J.D. tried to calm Appellant down, but she "started crying bad." *Id.*
> at 44. Appellant put the gun on his lap and tried to comfort J.D. *Id.* J.D. claimed
> that Appellant eventually put the gun on the floor, hugged her, and told her that
> "his boys" - whom J.D. believed meant members of a gang to which Appellant
> belonged - "knew who [J.D.] was, where [she] lived, who [her] son was, where
> [her] parents lived, and that if [she] told someone, that they'd come after [her],
> that they were going to be calling and checking in on him and if he didn't answer
> his phone, then they would know [J.D.] called the cops and they'd come after
> [her]." *Id.* at 45.

> J.D. testified that Appellant then moved the gun underneath the nightstand
> about three to four feet away from her and told her "that he wanted to have
> sex." *Id.* at 48. J.D. told Appellant that she did not want to have sex, but he
> continued his advances by "trying to take her pants off." *Id.* at 49. J.D. then "told
> [Appellant] to just get it over with." *Id.* J.D. testified that she relented because
> she "was scared," based on Appellant's having put a gun to her head, and she
> was "not going to fight him." *Id.* at 50. Appellant and J.D. had intercourse, during
> which J.D. "had [her] hands over [her] eyes crying." *Id.* at 51. J.D. claimed that
> she did not consent to the sexual encounter with Appellant. *Id.* at 52. After
> intercourse, J.D. testified that Appellant received "two phone calls" that "[h]e
> said … were from his boys." *Id.* at 54. Appellant told J.D. that he was "going to
> meet one of them to give the gun back" at a Sheetz gas station. *Id.* at 54, 55.
> Appellant "got the gun and put it in a plastic bag," after which he took J.D.'s
> phone "so [she] wouldn't try anything stupid like calling the police." *Id.* at 55.

In cases of rape, the uncorroborated testimony of the victim, if believed by the trier of fact, is sufficient to convict a defendant. *See e.g. Commonwealth v. Charlton*, 902 A2d 554 (Pa. Super. 2006); *Commonwealth v. Judd*, 897 A.2d 1224 (Pa. Super. 2006); *Commonwealth v. Poindexter*, 646 A.2d 1211 (Pa. Super. 1994).   As such, this Court finds that there was ample testimony provided by the victim to prove that the intercourse between Petitioner and the victim was nonconsensual.   It then becomes a question for the trier of fact to assess the veracity of these claims.   *Id*.   Thus, any motion by Counsel at the conclusion of the Commonwealth's case-in-chief on the grounds that the prosecution failed to establish the essential elements of forcible compulsion and lack of consent beyond a reasonable doubt would have been meritless.   *See Werts v. Vaughn*, 228 F.3d 178, 196 (3d Cir.2000) (finding counsel not ineffective for failing to pursue a meritless claim).   As such, the Court finds that the underlying, otherwise defaulted, claim of ineffective assistance of trial counsel lacks merit, and *Martinez* does not excuse this procedural default.

### ii.  Claim Four

Petitioner argues that trial counsel "also rendered ineffective assistance by failing to present available evidence of, argue to the jury about, or request an available instruction based on the complainant's failure to promptly report the alleged rape and sexual assault during several occasions right after the alleged incident when she safely could have done so." (Doc. 10-1 at 103).

A prompt complaint instruction alerts the jury to the issue of the complainant's credibility when he or she did not reveal that a sexual assault occurred at the first available opportunity.   *Commonwealth v. Sandusky*, 77 A.3d 663, 667 (Pa. Super. 2013).   Under

Pennsylvania law, the jury should receive a prompt complaint instruction when the actual occurrence of alleged sexual assaults is at issue and where the victim comprehends the offensiveness or wrongfulness of the conduct at the time it occurs.   *See Commonwealth v. Ables*, 590 A.2d 334, 340 (1991).   Because the instruction is not appropriate where the victim does not comprehend the offensiveness of the actions at the time they occur, "[t]he propriety of a prompt complaint instruction is determined on a case-by-case basis pursuant to a subjective standard based upon the age and condition of the victim."   *Commonwealth v. Thomas*, 904 A.2d 964, 970 (Pa. Super. 2006).   However, Pennsylvania law does not require a prompt complaint as an element of any sexual crime. 18 Pa.C.S. § 3105.

In this case, the evidence established that victim was unable to immediately report the incident due to Petitioner's actions and threats and that she did report at the earliest opportunity outside of his presence. Initially, the victim testified that the defendant had put a gun to her head, (Doc. 23-1 at 85) and threatened her with violence by his gang if she called the police.   (Doc. 23-1 at 90-92).   She feared that she felt if she reported anything to law enforcement, she or her family would be harmed. (Doc. 23-1 at 92).   Moreover, she could not immediately report the incident because Petitioner had taken her phone, and she had no access to a landline.   (Doc. 23-1 at 100-101). Even after defendant returned her phone, she explained that she did not contact police because of the threats he had previously made.   (Doc. 23-1 at 102-105).   The victim reported the incident at the first opportunity she was out of the home and Petitioner's presence, namely, when she arrived at work, approximately seven hours after the incident.   (Doc. 23-1 at 104-106).

Because the evidence reveals that the victim reported the incident at the first

opportunity that she could, within seven hours of the occurrence, the Court finds that the

omission of a prompt complaint instruction did not amount to a fundamental error, nor did

the absence of that charge prejudice Petitioner and as such counsel cannot be found to be

ineffective for failing to argue delay in reporting or failing to request such an instruction.

Consequently, the underlying, otherwise defaulted, ineffective assistance of counsel claim

does not meet the "some merit" threshold, and *Martinez* is unavailable to excuse Walls'

procedural default of this claim.

**B.**   **Claim Adjudicated on the Merits**

Under the AEDPA, federal courts reviewing a state prisoner's application for a writ of

habeas corpus may not grant relief "with respect to any claim that was adjudicated on the

merits in State court proceedings" unless the claim (1) "resulted in a decision that was

contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States" or (2) "resulted in a decision that

was based on an unreasonable determination of the facts in light of the evidence presented

in the State court proceeding."   28 U.S.C. § 2254(d).

"[B]ecause the purpose of AEDPA is to ensure that federal habeas relief functions as

a guard against extreme malfunctions in the state criminal justice systems, and not as a

means of error correction," *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (internal quotations

and citations omitted), "[t]his is a difficult to meet and highly deferential standard . . . which

demands that state-court decisions be given the benefit of the doubt."   *Cullen*, 563 U.S. at

181 (internal quotation marks and citation omitted).   The burden is on Walls to prove

entitlement to the writ.   *Id.*

Under 28 U.S.C. § 2254(d)(1), a decision is "contrary to" federal law if "the state

court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or

"if the state court confronts a set of facts that are materially indistinguishable from a decision

of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court]

precedent."   *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).   The test for § 2254(d)(1)'s

"unreasonable application of" clause is as follows: "[a]n 'unreasonable application' occurs

when a state court 'identifies the correct governing legal principle from [the Supreme]

Court's decisions but unreasonably applies that principle to the facts' of petitioner's case."

*Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (quoting *Wiggins v. Smith*, 539 U.S. 510, 519,

520 (2003)).   "It is not enough that a federal habeas court, in its independent review of the

legal question, is left with a firm conviction that the state court was erroneous."   Lockyer v.

Andrade, 538 U.S. 63, 75 (2003) (internal quotations omitted).   "Under § 2254(d)(1)'s

'unreasonable application' clause ... a federal habeas court may not issue the writ simply

because that court concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly."   *Id.* at 75–76

(quoting *Williams*, 529 U.S. at 411).   Rather, "[t]he state court's application of clearly

established law must be objectively unreasonable" before a federal court may grant the writ.

*Andrade*, 538 U.S. at 75.

The test for § 2254(d)(2)'s "unreasonable determination of facts" clause is whether

the petitioner has demonstrated by "clear and convincing evidence," § 2254(e)(1), that the

state court's determination of the facts was unreasonable in light of the record.   *See Rice v.*

*Collins*, 546 U.S. 333, 338–339 (2006) ("State-court factual findings, moreover, are

presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and

convincing evidence.' ") (quoting § 2254(e)(1)) (citing *Miller–El v. Dretke*, 545 U.S. 231, 240,

(2005)).   Importantly, the evidence against which a federal court measures the

reasonableness of the state court's factual findings is the record evidence at the time of the

state court's adjudication.   *Cullen*, 563 U.S at 185.

Finally, Section 2254(e) provides that "[i]n a proceeding instituted by an application

for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court,

a determination of a factual issue shall be presumed to be correct.   The applicant shall

have the burden of rebutting the presumption of correctness by clear and convincing

evidence."   28 U.S.C. § 2254(e)(1).

Petitioner's remaining claims of (1) ineffective assistance of trial counsel for failure to

present several witnesses at his trial regarding an alleged motivation for the victim to falsify

testimony and (2) ineffective assistance of trial counsel for failure to present several

character witnesses at trial concerning his reputation for non-violence and concerning the

victim's character for truthfulness, have been fully adjudicated on the merits during the state

court proceedings.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court explained that

there are two components to demonstrating a violation of the right to effective assistance of

counsel.   First, the petitioner must show that counsel's performance was deficient.   This

requires showing that "counsel's representation fell below an objective standard of

reasonableness." *See id.* at 688; *see also Williams v. Taylor*, 529 U.S. 362, 390-91 (2000).

Second, under *Strickland*, the petitioner must show that he was prejudiced by the deficient

performance. "This requires showing that counsel's errors were so serious as to deprive

the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. To

establish prejudice, the defendant "must show that there is a reasonable probability that, but

for counsel's unprofessional errors, the result of the proceeding would have been different.

A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*See id.* at 694. The *Strickland* test is conjunctive, and a habeas petitioner must establish

both the deficiency in the performance prong and the prejudice prong. *See Strickland*, 466

U.S. at 687*; Dooley v. Petsock*, 816 F.2d 885, 889 (3d Cir. 1987). As a result, if a

petitioner fails on either prong, he loses. *See Holladay v. Haley*, 209 F.3d 1243, 1248

(11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a

violation of the Sixth Amendment, the court need not address the performance prong if the

defendant cannot meet the prejudice prong, or vice versa.") (citation omitted); *Foster v.

Ward*, 182 F.3d 1177, 1184 (10th Cir. 1999) ("This court may address the performance and

prejudice components in any order but need not address both if Mr. Foster fails to make a

sufficient showing of one.").

The two-pronged test established in *Strickland* "qualifies as 'clearly established

Federal law' " for purposes of the AEDPA. *See Rainey v. Varner*, 603 F.3d 189, 197 (3d

Cir. 2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 391 (2000)). Therefore, under §

2254(d)(1), the relevant inquiry in assessing ineffectiveness claims that have been

adjudicated on the merits is whether the state court's decision involved an unreasonable

application of Strickland or are based on an unreasonable determination of the facts.   *See*

*Jacobs v. Horn*, 395 F.3d 92, 107 n.9 (3d Cir. 2005).   Moreover, Pennsylvania's three-

pronged test for ineffective assistance claims, *see Commonwealth v Pierce*, 515 Pa. 153,

527 A.2d 973, 975-77 (Pa. 1987), is not contrary to *Strickland*, *see Jacobs*, 395 F.3d at 107

n.9.   Below, the Court considers both Petitioner's Claim One and Claim Two together.

### i.   Claim One

Petitioner "contends that his trial counsel, Jason Pudleiner, Esq., rendered

ineffective assistance under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), for failing

to interview and call several witnesses, including the complainant's own parents, who would

have testified that just prior to the incident in question, the complainant had been conspiring

to remove Petitioner from the residence that they shared together, which testimony of

innocence would have directly rebutted the complainant's testimony and undermined her

credibility, creating a reasonable probability that, in light of other compelling evidence in the

case supporting Petitioner's innocence, Petitioner would have been acquitted."   (Doc. 10 at

53).

### ii.   Claim Two

Petitioner next contends that trial counsel was "ineffective for failing to interview and

call character witnesses, again including the complainant's parents, who would have

provided evidence of Petitioner's positive reputation in the community for non-violence in

this forcible rape case as well as evidence of the accuser's poor reputation in the same

community for truthfulness" as he believes that "such testimony would have constituted

substantive evidence of innocence in this she said/he said case, and a strong defense

Petitioner was charged with a rape by way of a 'gun' which he adamantly denied."   (Doc. 10

at 87).

In addressing both of Petitioner's claims, the Superior Court, agreed with the PCRA

court's sound rationale and determination and adopted the PCRA court's decision as its

own. (Doc. 23-4 at 97). The PCRA court found the following:

> In Counts A, C, D, and E, Defendant alleges that Attorney Pudleiner failed to call several witnesses both as fact witnesses and as character witnesses. Defendant alleges that Attorney Pudleiner was ineffective for failing to interview and call as witnesses William Walls, Sr.; William Walls, Jr.; Heidi Meek; the Complainant's parents, Jeffrey and Debra Dillman; and Michael Boslett, Defendant's state parole officer.
>
> "Generally, where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests." *Commonwealth v. Howard*, 719 A.2d 233, 23 7 (Pa. 1998). "Trial counsel will not be deemed ineffective for failing to assert a claim that would not have been beneficial, or for failing to interview or present witnesses whose testimony would not have been helpful." *Id. See also Commonwealth v. Williams*, 732 A.2d 1167, 1189 (Pa. 1999). "Failure of trial counsel to conduct a more intensive investigation or to interview potential witnesses does not constitute ineffective assistance of counsel, unless there is some showing that such investigation or interview would have been helpful in establishing the asserted defense." *Commonwealth v, Pursell*, 724 A.2d 293, 306 (Pa. 1999)(citations omitted).
>
> Here, the clear trial strategy was to show that the sexual encounter was consensual. Instantly, Attorney Pudleiner made a strategic decision not to call several witnesses, including character witnesses, because their testimony was either irrelevant or unhelpful to Defendant's case. At the PCRA hearing, Attorney Pudleiner testified that he wrote a letter to Defendant, prior to trial, and specifically stated why he felt that the testimony of Complainant's parents and other witnesses was not relevant.[4] Defendant, on cross-examination, testified that in his letter to Attorney Pudleiner[5] he stated that the Complainant's parents

---

[4]   PCRA Hearing Tr., pg. 41, October 23, 2017.
[5]   See Commonwealth's Exhibit 1.

could testify that he was good to their daughter and never put his hands on her.[6]

In essence, Defendant suggested Complainant's parents would testify to his peaceful character as directed to the victim. Defendant admitted that he did not include any factual information, pertaining to the case, to which the Complainant's parents could testify in his letter.[7]

Furthermore, Defendant has a long criminal history with 32 arrests and 26 convictions. Attorney Pudleiner testified that he did not call witnesses to testify to Defendant's character because he felt that due to Defendant's long list of convictions for violent crimes, character evidence stating that Defendant was peaceful would not be helpful to Defendant's case.[8] Defendant himself admitted that he had been convicted of these violent crimes, including a felony law enforcement assault and a felony robbery with a deadly weapon.[9] While evidence of Defendant's crimes constituting *crimen falsi* was admitted for a limited purpose, if character evidence of Defendant's supposed peaceful treatment of complainant had been introduced by Defendant then the door would have been opened to admit evidence of Defendant's crimes of violence as well. Attorney Pudleiner was wise to be sure the jury did not hear of Defendant's violent history.

With regard to complainant's alleged reputation for untruthfulness, evidence of a victim's reputation in the community for untruthfulness is a valid line of attack. *Commonwealth v. Butler*, 621 A2d 630, 632 (Pa. Super. 1993). This may be particularly important where, like here, the Commonwealth's case on the central issue of consent is limited to the credibility of one witness, i.e., the Complainant. *See, generally, Commonwealth v. Harris*, 785 A.2d 998 (Pa. Super. 2001), citing *Commonwealth v. Weiss*, 606 A.2d 439, 442 (Pa. 1992). Therefore, this Court must conclude that the issue has arguable merit as the failure to call available character witnesses may constitute ineffective assistance of counsel. *Id*. So, inquiry turns to whether there was any reasonable basis for trial counsel's decisions to not call Mr. or Mrs. Dillman to testify to Claimant's reputation for untruthfulness. Critically, as explained at the PCRA hearing, Defendant never told Attorney Pudleiner that the Complainant's parents would testify to Complainant's bad reputation for truthfulness. That alone constitutes a reasonable basis for not calling these witnesses. Even if Attorney Pudleiner had called Complainant's parents, they would have only

---

[6]   PCRA Hearing Tr., pg. 28, October 23, 2017.

[7]   *Id.*

[8]   *Id.* at 64-65.

[9]   *Id*. at 22-23.

testified to Complainant's general reputation of "sometimes good, sometimes bad" truthfulness. [10] This "in between" reputation for truthfulness by Complainant is not the same as saying she is untruthful. The alleged "reputation" evidence is unequivocal [*sic*] at best. Therefore, even if Attorney Pudleiner had been made aware that Claimant's parents might believe her reputation for truthfulness was "in between" it is unlikely that this testimony would have had any impact on the rape by forcible compulsion conviction.

Based on the information or lack of information provided by Defendant to Attorney Pudleiner, in regards to how the Complainant's parents' testimony could help his case, Attorney Pudleiner strategically balanced the pros and cons of having Complainant's parents testify and decided that the information was not relevant or helpful. Thus, Defendant has failed to prove the second prong of the test for ineffectiveness.

In regards to Heidi Meeks, Attorney Pudleiner did converse with her and she was aware of the trial date and indicated to Attorney Pudleiner that she would appear. However, Ms. Meeks never appeared as promised. Attorney Pudleiner had every belief that Heidi Meeks was a friendly witness to the Defendant. Therefore, it was reasonable for Attorney Pudleiner to not subpoena her as a witness for trial. Attorney Pudleiner stated that he may have had her testify regarding the affair between herself and the Defendant but he was going to see how the testimony went and make the decision regarding having her testify then. Also, Heidi Meeks indicated to Attorney Pudleiner that she overheard the Complainant state that "she was going through with the charges because [the Defendant] was cheating on her.[11] Attorney Pudleiner explained that he did not think the jury would find this testimony credible because Heidi Meeks has a bias in favor of the Defendant because she is his girlfriend.

In regards to Defendant's father, Defendant asserts in his Amended Petition for Post-Conviction Relief that Williams Walls, Sr. would testify to Defendant's good character. At the PCRA hearing Attorney Pudleiner testified that he felt that having character witnesses testify to Defendant's reputation in the community would be detrimental because this testimony could be counteracted by Defendant's history of violent convictions. Therefore, Attorney Pudleiner had a reasonable basis for not calling these witnesses, and these Counts are meritless.

Defendant also alleges that Attorney Pudleiner was ineffective for failing to call Defendant's state parole officer, Michael Boslett, as a witness. Defendant

---

[10]   *Id.* at 92
[11]   *Id.* at 63.

asserts that Mr. Boslett could have testified in regards to Defendant's negative drug tests while on state parole. Attorney Pudleiner testified that he did not want to call Defendant's parole officer because that would highlight to the jury that Defendant was on state parole.[12] Therefore, Attorney Pudleiner had a reasonable basis not to call Mr. Boslett as a witness. This Court notes that Defendant was charged with Possession of a Controlled Substance and Possession of Drug Paraphernalia. A clean drug test history does not necessarily prove Defendant did not possess controlled substances or paraphernalia. In any event, the jury apparently did not believe the portion of complainant's testimony regarding the drugs and paraphernalia being Defendants. "The weight of the evidence is exclusively for the finder of fact, which is free to believe all, part, or none of the evidence, and to assess the credibility of the witnesses." *Commonwealth v. DeJesus*, 860 A.2d 102 (Pa. 2004). Therefore, this issue is without merit.

Ultimately, Defendant was acquitted of both drug charges, so even if Defendant could show that this issue has arguable merit and that Attorney Pudleiner had no reasonable basis for his inaction, Defendant cannot show that he was prejudiced by Attorney Pudleiner's decision not to call Mr. Boslett as a witness.

(Doc. 23-4 at 4-9).

This Court further finds that the state court's conclusion regarding trial counsel's tactical decision not to call certain witnesses was entirely reasonable. The decisions of which witnesses to call to testify are strategic, and therefore left to counsel. *Diggs v. Owens*, 833 F.2d 439, 446 (3d Cir. 1987); *see also Henderson v. DiGuglielmo*, 138 F. App'x 463, 469 (3d Cir. 2005)("Counsel's failure to call a witness 'is precisely the sort of strategic trial decision that *Strickland* protects from second-guessing.' ") The United States Constitution does not require counsel to call or interview every witness suggested to him by his client. *United States v. Ciancaglini*, 945 F. Supp. 813, 823 (E.D. Pa. 1996); *United States v. Jones*, 785 F. Supp. 1181, 1183 (E.D. Pa. 1992). It is also well-established that counsel's decision

---

[12]   PCRA Hearing Tr., pg. 60, October 23, 2017.

not to introduce testimony potentially in conflict with the central defense strategy is not

unreasonable. *See Henderson*, 138 F. App'x at 470 (collecting cases).

While it may appear at first that some of the witnesses' testimony would have

assisted Petitioner's defense, trial counsel reasonably determined that it would likely have

the opposite effect.   Because the witnesses' testimony would not have helped and, in some

instances, would have been damaging to trial counsel's central defense strategy, counsel

had a reasonable basis for not calling these individuals.   For these reasons, this Court finds

that PCRA opinion, adopted by the Superior Court, was not "contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme

Court of the United States." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003).   Consequently,

Petitioner's first and second claims provide no basis for habeas relief and his petition for writ

of habeas corpus will be denied.

## V.   Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate

of appealability ("COA"), an appeal may not be taken from a final order in a proceeding

under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial

showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).   "A petitioner satisfies

this standard by demonstrating that jurists of reason could disagree with the district court's

resolution of his constitutional claims or that jurists could conclude the issues presented are

adequate to deserve encouragement to proceed further."   *Miller-El v. Cockrell*, 537 U.S.

322 (2003).   Walls fails to demonstrate that a COA should issue.

The denial of a certificate of appealability does not prevent Walls from appealing the order denying his petition so long as he seeks, and obtains, a certificate of appealability from the Third Circuit Court of Appeals.   *See* FED. R. APP. P. 22(b)(1).

## VI.   Conclusion

For the reasons set forth above, the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 will be denied.

A separate Order shall issue.

Dated: October 4, 2022

Robert D. Mariani
United States District Judge